# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| KENNETH REVEN MCCLAIN, ID # 33793-177, | ) ) | |
| Movant, | ) | |
| vs. | ) ) | No. 3:10-CV-0102-G-BH No. 3:05-CR-0332-G |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order 3-251, this case has been automatically referred for findings, conclusions, and recommendation.

### I. BACKGROUND

Federal inmate Kenneth Reven McClain ("Movant") filed a *Motion to Vacate, Set Aside, or Correct Sentence* ("Mot.") under 28 U.S.C. § 2255 challenging his federal conviction and sentence in Cause No. 3:05-CR-0332-G. The respondent is the United States of America ("Government").

### A. **Plea and Sentencing**

On January 25, 2006, Movant was charged by a superseding indictment with: 1) conspiracy to defraud the United States by aiding in the filing of false claims in violation of 18 U.S.C. § 286 (count one); 2) filing false claims against an agency of the United States and aiding and abetting in violation of 18 U.S.C. §§ 2, 287 (counts two and three); 3) mail fraud in violation of 18 U.S.C. §§ 2, 1341 (counts four through seven); 4) use of postal fictitious name or address in connection with unlawful activities in violation of 18 U.S.C. § 1342 (counts eight through ten); and 5) aggravated identity theft in violation of 18 U.S.C. § 1028(a) (counts eleven through fourteen). (*See* doc. 14).[1]

Movant pled not guilty and was tried before a jury on May 15-18, 2006. He was convicted

---

[1] All document numbers refer to the docket number assigned in the underlying criminal action.

on all counts. (*See* doc. 78). At Movant's sentencing hearing on September 5, 2006, his convictions for counts one through three were dismissed on the Government's motion, and he was sentenced to 126 months confinement on the remaining counts, to be followed by three years supervised release. (*See* doc. 134). The Fifth Circuit affirmed Movant's conviction and sentence in an unpublished opinion on June 6, 2008. *United States v. McClain*, 280 Fed. Appx. 425 (5th Cir. June 6, 2008). The Supreme Court denied Movant's petition for certiorari on January 21, 2009. *See* No. 08-7797.

**B.    Substantive Claims**

Movant filed his motion to vacate and supporting memorandum ("Mem.") on January 20, 2010, and a supplemental 2255 motion on March 3, 2010. In his motion, memorandum, and supplemental motion, he asserts the following claims:

(1) his trial attorney rendered ineffective assistance of counsel by:

-failing to file a motion to dismiss all charges;

-failing to investigate the case, present a defense, and call certain defense witnesses;

-failing to advise Movant of plea bargain offers;

-preventing Movant from testifying on his own behalf at punishment; and

-not advising Movant regarding how the sentencing guidelines would apply to him; and

(2) his convictions on counts eleven through fourteen of the superseding indictment violated *Flores-Figueroa v. United States*, 129 S.Ct. 1886 (2009).

(*See* Mot. at 5-10; Mem. at 13-19, 21-35; Reply at 1-4). The Government filed a response brief on April 30, 2010, and attached an affidavit from Movant's trial counsel. (*See* Resp. Opp'n Mot. ("Resp.")). Movant filed a reply brief on June 8, 2010. The Government filed a supplemental response brief on August 17, 2010, Movant filed a supplemental reply on September 14, 2010, the

2

Government filed another supplemental response brief on September 24, 2010, and Movant filed a final reply brief on October 8, 2010.

**C.      Evidentiary Hearing**

On August 31, 2010, this Court held an evidentiary hearing on Movant's claims that his trial attorney did not advise him of any plea bargain offers or how the sentencing guidelines would apply to him, and that his attorney prevented him from testifying on his own behalf.

Movant testified that he had several meetings with his attorney and that they never had any discussion of any specific plea agreement, either oral or written. Movant acknowledged that counsel advised him to plead guilty because the Government has a high conviction rate, but he maintained that counsel never told him of a *specific* plea agreement. He claimed that he never had a discussion with counsel about how the federal sentencing guidelines would apply to him other than a basic discussion about the base offenses, that counsel misinformed him about what he would be held liable for, and that he thought he would only be held liable for actual rather than intended loss. Had he known how the guidelines applied to him and how acceptance of responsibility would affect his sentence, he would have accepted a plea agreement. Movant acknowledged that he has been arrested between ten and fifteen times in his lifetime, he had had a previous attorney, he had hired counsel to take his case to trial, and he always maintained his innocence. He insisted, however, that he would have pled guilty had he been advised of specific offers. Finally, Movant testified that he asked if he could testify at trial, counsel told him that he would not agree to that and that he would have to ask himself questions, and that the judge would not allow this.

Counsel testified that he was licensed to practice law in 1995 and became board-certified in criminal law in 2002. He represented Movant in 2006. He tells all of his clients that they make the

3

decision about whether to plead guilty, have a jury trial, or testify at trial. On April 16, 2006, counsel met with Movant and told him of an offer for a plea to four counts whereby in counsel's estimation, Movant would be sentenced to 36-42 months. On May 8, 2006, he met with Movant and advised him of another plea offer where Movant would plead to three counts, retain the ability to appeal, and be sentenced to between 59-65 months. At that meeting, he also advised Movant that if he went to trial and was convicted, he could be facing a possible punishment of 137 to 147 months imprisonment. Another plea was offered when trial began. Movant declined all of these offers and continued to maintain his innocence. Counsel did not believe that any of the offers were reduced to writing. His notes about his meetings with Movant, which he made on the days of the meetings, were admitted into evidence at the hearing. (*See* Govt. Ex. 1, 2).

Counsel also testified that he advised Movant not to testify at trial but fully expected him to testify, and he was surprised when Movant took his advice. He might have told Movant that he would have to testify in narrative form, but he did not tell him that he could not testify. Counsel also filed a motion to withdraw as Movant's attorney on May 8, 2006, because he was concerned about statements Movant had made about paying witnesses. Movant did not waive his attorney/client privilege so that the reasons for the motion could be openly discussed, and the motion was denied.

## II. SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir.

1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the asserted error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In several grounds for relief, Movant asserts that his trial attorney provided ineffective assistance of counsel.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that

counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

## A.  Failure to File a Motion to Dismiss All Charges

Movant claims that counsel failed to file a motion to dismiss all charges after the government failed to present a search warrant for mail addressed and sent to Roosevelt Hicks, Keith Perry, and Geordan Jordan that was seized at the hotel prior to Movant's arrest.[2] (Mem. at 25-27; Reply at 7-8).

Movant was arrested at a hotel in Dallas by postal inspectors on November 30, 2005, for making fraudulent claims to the Federal Emergency Management Agency (FEMA) for disaster claims after Hurricanes Katrina and Rita. *McClain*, 280 Fed. Appx. at 427. (R. 7:126-50; R. 8:166-

---

[2] Movant notes in his reply brief and supplemental reply brief that an inspector testified incorrectly at trial that he obtained a search warrant to seize and open the packages delivered to the hotel, and that the Government was mistaken in its response brief when it referred to this testimony. This has no effect on the *Strickland* analysis of whether counsel was ineffective in failing to file a motion to dismiss all charges against Movant.

70). Prior to Movant's arrest, inspectors detained and interviewed a man named Andrew Hamann, who told them that he was homeless, and that he had been hired by a man named "Jesse" to stay at the hotel and collect packages mailed to the hotel room for fifteen to twenty dollars a day. During a ten-day period, Hamann had collected between thirty to forty packages delivered to the hotel. He had contacted "Jesse" by telephone when packages were delivered to the hotel, and "Jesse" had picked up the packages. While Hamann was being questioned, several packages addressed to several different people were delivered to the hotel room from Commercial Mail Receiving Agencies (CMRAs), such as a UPS store in Abilene, Texas. At inspectors' request, Hamann contacted "Jesse"and informed him that packages had arrived. When "Jesse" arrived at the hotel, he was arrested and subsequently identified as Movant. (R. 5:16-27, 30-32; R. 8:166-70, 366-79).

Implicit in Movant's argument that his attorney was ineffective for failing to file a motion to dismiss is the contention that the government was required to obtain a warrant before seizing these packages, that the failure to do so violated his Fourth Amendment rights, and that a motion to dismiss would have been granted by the court. Movant, however, has not shown any prejudice under the *Strickland* standard because his Fourth Amendment rights were not violated by any failure to obtain a search warrant before the packages were seized and opened by law enforcement. First, there was testimony at the suppression hearing and at trial that Hamann consented to the postal inspectors entering the hotel room and seizing the packages that he had been hired by Movant to retrieve while staying at the hotel. (Supp. Hearing:72; R. 9:382-83). Second, and more importantly, Movant has failed to establish that his constitutional rights were violated by the seizure of packages addressed to persons other than himself because he has failed to show that he had any reasonable expectation of privacy as to those packages.

7

A defendant has the burden to establish that he has standing to challenge a search or seizure under the Fourth Amendment by showing that he has a reasonable expectation of privacy in the place searched or the object seized. *United States v. Judd*, 889 F.2d 1410, 1413 (5th Cir. 1989).[3] In *United States v. Smith*, 39 F.3d 1143, 1144-45 (5th Cir. 1994), the Fifth Circuit held that the defendant did not have standing to object to a postal inspector's search of a letter addressed to another person who had agreed to give it to the defendant when it arrived, and the defendant gave equivocal testimony at the motion to suppress hearing about the ownership of the letter. Likewise, in *United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992), the court found that a defendant who was neither the sender nor the addressee and who attempted to disassociate himself from a package did not have standing to object to its search. For this reason, the defendant failed to establish that his attorney was ineffective for failing to file a motion to suppress the evidence in the package. *Id.*

Here, Movant was neither the sender nor the addressee of the packages. Two were addressed to other people (including a dead person), and one was addressed to an alias (R. 5:16, 22-25); they were mailed to a location where they were retrieved by someone other than Movant. At trial, Movant never acknowledged that he used aliases or other people's names. He has not shown that he had standing to object to the search of the packages based on a reasonable expectation of privacy. *See also United States v. Givens*, 733 F.2d 339, 341-42 (4th Cir. 1984) (holding that there is no reasonable expectation of privacy in a package addressed to another); *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988) (no privacy interest where the defendant is not the sender or the addressee and no other source of a privacy interest is asserted). Movant has failed to meet the

---

[3] A showing of a "constitutionally protected reasonable expectation of privacy" involves a two-part inquiry: (1) whether a person manifested a subjective expectation of privacy, and (2) whether society is willing to recognize that expectation as legitimate. *California v. Ciraolo*, 476 U.S. 207, 211 (1984).

*Strickland* standard by showing a reasonable probability that a motion to dismiss based on the failure of the government to obtain a search warrant to search the packages would have been granted. This claim is without merit.

B. **Failure to Investigate Case, Present Defense, and Call Witnesses**

Movant also claims that his trial attorney was ineffective for failing to fully investigate his case and develop an appropriate defense. (Mem. at 13-16, 29-31; Supp. Motion at 1-2). He has submitted affidavits from April James and investigator Dakota Patterson as well as a transcript of Patterson's interview of government witness Hamann. He claims that testimony from these witnesses could have been used to impeach certain testimony offered at trial, including Hamann's testimony that Movant was "Jesse," the person who hired Hamann to retrieve packages at the hotel, and about Movant's hairstyle. (Mem. at 13; Supp. Mot. at 1-2). Movant also claims that counsel should have contacted an employee of a cell phone company to testify that Movant could not have made some of the calls to the postal centers from the cell phone found on him when he was arrested.

"A movant 'must allege with specificity what the investigation would have revealed and how it would have altered the outcome' of the proceeding." *Potts v. United States*, 566 F. Supp. 2d 525, 537 (N.D. Tex. 2008) (accepting recommendation of Mag. J.) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Movant does not explain how April James' testimony would have helped his case. He was arrested at the hotel by postal inspectors after being called by Hamann on a cell phone that was later found on Movant's person, along with a piece of paper with the same telephone number and the name "Jesse" written on it. Hamann identified Movant as "Jesse." (R. 5:22-30). Movant has not shown how any testimony about his hairstyle would have impeached Hamann's identification. He also provides no specificity about the defense investigator's potential

testimony and how this testimony would have altered the outcome in his case. The transcript of the conversations between the investigator and Hamann reveals no material statement that could have been used to impeach Hamann. As for Movant's assertion that counsel should have presented testimony that Movant could not have made some of the phone calls from the cell phone, Movant has not provided a signed affidavit to this fact. Even if Movant did not make a few of the phone calls from the cell phone to the postal centers, this does not explain the numerous other calls made from the cell phone to the various postal centers. (R. 8:181-84). Movant has not shown a reasonable probability that he would not have been convicted if this testimony had been presented.

The Government provided an affidavit from Movant's trial counsel that explains that he reviewed all the evidence in Movant's case, including the cell phone records and an interview with Hamann. He made the strategic decision not to call any witnesses at trial and to argue instead that the Government had failed to prove its case because no witness could testify that Movant opened any mailbox at any of the postal centers, that he had ever filed a claim with FEMA, or that he had received any checks from FEMA. (Response, Appendix). Movant has not shown that counsel's trial strategy constituted deficient performance, especially given the lack of impeachment evidence identified by Movant in his motion. Accordingly, these claims are without merit and should be denied.

## C. <u>Failure to Advise Movant of Plea Bargain Offers and Sentencing Guidelines</u>

Movant next asserts that his trial counsel failed to advise him of the Government's plea offers prior to trial and of how the sentencing guidelines applied to him. (Mem. at 16-21, 32-35).

At the evidentiary hearing, Movant testified that he was not informed of any specific plea offers or how the sentencing guidelines would apply to him, and that he would have accepted a plea

offer if it had been communicated to him and if he had been made aware of how the guidelines would apply to him. This testimony, however, contradicted his testimony that he always maintained his innocence and that he hired counsel for the specific purpose of taking his case to trial. Movant's testimony was also contradicted by counsel's very specific testimony about the Government's plea offers and his discussions with Movant about the offers and the sentencing guidelines, and by counsel's contemporaneous notes of the discussions. Based on the demeanor of the witnesses, their respective roles, any apparent bias, consistencies in testimony, explanations for inconsistencies, and corroborating evidence, the Court finds that Movant's testimony regarding these claims was not credible. Counsel advised Movant of the Government's plea offers and how the sentencing guidelines would apply to him. Accordingly, these claims for relief should be denied.

## D. **Preventing Movant from Testifying at Punishment**

Movant also contends that his trial attorney prevented him from testifying at his trial. (Mem. at 21-25).

At the evidentiary hearing, Movant testified that he told counsel that he wanted to testify at his trial, that counsel told him that he could not and that he would not ask Movant any questions, and that the district court would not permit him to ask questions of himself. Counsel testified unequivocally that he always informs his clients that they decide whether or not to testify at trial, that he advised Movant not to testify but fully expected him to ignore his advice, and that he was surprised when Movant took his advice. Counsel acknowledged that he may have advised Movant that he would have to testify in narrative form, and he explained that he had filed a motion to be removed as Movant's counsel prior to trial because of statements Movant had made about paying potential witnesses to testify.

11

Based on the demeanor of the witnesses at the hearing, any apparent bias, and consistencies and inconsistencies in testimony, the Court finds that Movant's testimony was not credible. Movant was advised of his right to testify at trial and was not prevented from doing so by his attorney. He chose to take his attorney's advise and opted not to testify at trial. Accordingly, this claim is without merit.

Movant has failed to establish that his trial attorney provided ineffective assistance of counsel under the *Strickland* standard, and these claims should be denied.

## IV. SUFFICIENCY OF THE EVIDENCE

Movant also asserts that the evidence is insufficient to support his convictions for aggravated identity theft under *Flores-Figueroa v. United States*, 129 S.Ct. 1886 (2009). (Mem. at 27-29).

*Flores-Figueroa* was decided by the Supreme Court after Movant's direct appeal. The defendant was convicted of aggravated identity theft after the evidence at trial established that he had given an employer a false name, birth date, Social Security number, and counterfeit alien registration card in 2000. The Social Security number and the registration card number were not those of a real person. In 2006, he gave his employer new counterfeit Social Security and registration cards with his name and numbers that were assigned to other people. *Id.* at 1889. The Supreme Court held that where the applicable statute defines aggravated identity theft as knowingly transferring, possessing, or using, without lawful authority, a means of identification of another person, the government must prove that the defendant knew that the means of identification did, in fact, belong to another person, as opposed to being merely a counterfeit identification. *Id.* at 1893-94; *see* 18 U.S.C. § 1028A(a)(1). The Fifth Circuit has since clarified, in *United States v. Stephens*, 571 F.3d 401, 404-05 (5th Cir. 2009), that *Flores-Figueroa* is a sufficiency of the evidence case.

## A. Procedural Bar

The Government concedes that *Flores-Figueroa* applies retroactively on collateral review. (Supp. Resp. at 2). It contends, however, that this claim for relief is procedurally barred because it was not raised on direct appeal, and that Movant has not overcome this procedural bar. *Id.* at 2-3.

As noted, defendants may be procedurally barred from collaterally attacking claims that were not raised in a direct appeal. *Willis*, 273 F.3d at 595. To overcome the bar, they must show "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. Even then, any new assertion of error is limited to "issues of constitutional or jurisdictional magnitude." *Id.* The only exception is when a movant can establish a fundamental miscarriage of justice, *i.e.*, that he is actually innocent of the crime convicted. *Id.*

At trial, Movant unsuccessfully moved for a judgment of acquittal at the close of the government's case. Proceeding *pro se* on direct appeal, he argued that the evidence was insufficient to support his convictions. The Fifth Circuit held that the evidence was sufficient to prove each element of each count of conviction under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *McClain*, 280 Fed. Appx. at 429. This issue was therefore raised by Movant on direct appeal and is not barred.[4]

## B. Evidence of Knowledge

Movant contends that the evidence is insufficient to establish that he knew that the means of identification he possessed, as alleged in counts eleven through fourteen of the indictment,

---

[4] Movant did not assert his claim that the jury instructions were erroneous because they did not require the jury to determine whether he knew that he used or possessed the means of identification of another person on direct appeal, however. (Supp. Reply at 3-4). He has not alleged or shown any cause or prejudice for this failure, and this claim is therefore procedurally barred. Notwithstanding the bar, this claim also lacks merit because the jury instructions tracked the language of the statute, 18 U.S.C. § 1028A. (doc. 77, pp. 22-23).

actually belonged to other people. Counts eleven through fourteen of the superceding indictment allege that Movant knowingly possessed and used, without lawful authority, the means of identification of another.

Review of the sufficiency of the evidence to support a criminal conviction is "highly deferential to the verdict." *United States v. Redd*, 355 F.3d 866, 872 (5th Cir. 2003). The evidence is deemed sufficient to support a conviction if, viewing the evidence in the light most favorable to the conviction and drawing all reasonable inferences from the evidence, the elements of the offense were established beyond a reasonable doubt. *United States v. Myers*, 104 F.3d 76, 78 (5th Cir. 1997). Proof to support a conviction may be direct or circumstantial, and the jury is free to choose among reasonable constructions of the evidence. *United States v. Anderson*, 174 F.3d 515, 522 (5th Cir. 1999).

### 1. *Count Eleven*

Count eleven alleges that Movant possessed and used a specific North Carolina identification number, with the assumed name Keith Perry. (doc. 14, p. 13).

Keith Perry testified at trial that Movant approached him at a train station and offered him money for filling out applications for FEMA money and for a copy of his ID. Perry further testified that he gave Movant his ID, his Social Security card, and his voter registration card, and that Movant never returned these documents despite his promise to do so. (R. 9:359-63). The postal inspector testified that he recovered Perry's photo ID, along with photo IDs for Tony Jackson and Michael Larry, from Movant's wallet, and he recovered a copy of a driver's license and university ID for Aaron Mikeska from Movant's truck. (R. 8:184-86, 198-99). Phone calls from Movant's cell phone by someone identifying himself as Keith Perry were made to a postal center. This person opened

a mailbox there with the information from Perry's ID and asked that mail be forwarded to the address of the hotel in Dallas where postal inspectors confiscated a package containing a $2000.00 Treasury check addressed to Perry. (R. 8:188-91, 230-36). Viewed in the light most favorable to the verdict, the evidence is sufficient to support Movant's conviction on count eleven for aggravated identity theft of Keith Perry's identification number.

Movant contends that the evidence is insufficient to support his conviction on this count because Movant paid Perry to fill out applications for relief from FEMA, but there was no evidence that Movant completed documents using Perry's identification (Supp. Reply at 2). While Perry completed the application himself, there was no evidence that he benefitted from the application for disaster relief. Rather, the evidence presented at trial established that it was Movant who attempted to receive the disaster relief check addressed to Perry because of the fraudulent application that Movant submitted, and that Movant would have obtained this benefit had he not been arrested. Movant also failed to return Perry's documents as promised. Viewed in the light most favorable to the verdict, the evidence supports the element of the offense that Movant knew that the identification he possessed when arrested and used to obtain a check for a fraudulent claim to FEMA belonged to Keith Perry. *See United States v. Stephens*, 571 F.3d at 404-05 (holding the evidence sufficient to support a conviction for aggravated identity theft where the defendants established a fake charitable web site, received donations through the web site, and then deposited the donations in bank accounts created using the names and identification numbers of other people); *United States v. Chandler*, 368 Fed. Appx. 495, 497-98 (5th Cir. Feb. 24, 2010) (holding the evidence to support a finding that the defendant knew that the means of identification he used belonged to a real person where he opened a bank account using another person's name and social security number but his own address and

date of birth and then endorsed two convenience checks using the other person's name).

## 2. *Counts Twelve-Fourteen*

Counts twelve through fourteen allege that Movant possessed and used three specific Texas driver's license numbers with the assumed names Corey Arness, Paul Linder, and Lonnie Smith. (doc. 14, p. 13).

The evidence at trial established that Movant's truck contained the mailbox applications he used to open mailboxes under the three names listed in the indictment, that calls were made from Movant's cell phone to postal centers where mailboxes were opened under these names, that checks issued from FEMA were addressed to these names and mailed to the postal centers based on fraudulent claims made to FEMA, and that the identification numbers used to open the mailboxes and file disaster assistance applications were Texas driver's license numbers that belonged to three other people. (R. 8:200-08, 255-60, 278-80, 282-89).

Movant contends that the evidence is insufficient to support the element that he knew that the Texas driver's license numbers used to open the mailboxes and file fraudulent disaster assistance claims belonged to actual people. While there was no direct evidence, circumstantial evidence was presented to show that Movant knew that these numbers belonged to actual people. Movant's wallet contained the ID of Keith Perry, a person he had actually met. Movant's wallet also contained ID cards for two other people, and his truck contained a copy of the driver's license and a university ID of a third person. (R. 8:184-86, 198-99). Evidence was also presented that a package addressed to a deceased person, Roosevelt Hicks, was delivered to the hotel, that Hamann contacted Movant to tell him that he had received a package for Hicks, that Hicks' name and social security number were used to file a fraudulent disaster assistance application and to open a mailbox to which disaster

16

relief checks were mailed, and that calls were made to the postal center where the mailbox was opened in Hicks' name from Movant's cell phone. (R. 7:126-50; R. 8:211-16). Substantial evidence was presented to the jury that Movant had used, attempted to use, or intended to use, the means of identification of several different actual people in his scheme to fraudulently obtain disaster assistance money from the federal government. From this, the jury could infer that Movant also knew that the driver's license numbers he used to file fraudulent FEMA claims under the names charged in counts twelve through fourteen belonged to actual people.

Movant contends that this case is comparable to *United States v. Parks*, 2010 WL 1994186 (S.D. Tex. May 17, 2010), where a district court granted Park's motion to vacate his plea to one count of aggravated identity theft. The court determined that Parks had failed to raise the issue on direct appeal, but he had established that he was actually innocent of aggravated identity theft and had therefore overcome the procedural bar. The court then held that Parks' guilty plea was not knowing and voluntary because Parks pled guilty before *Flores-Figueroa* was handed down by the Supreme Court, and an essential element of the crime was therefore not properly understood by the parties. *Id.* at *11.

Movant's case is distinguishable in two respects. First, in its determination that Parks had shown his actual innocence, the district court noted that the government had argued that it was statistically improbable that Parks could have used numerous social security numbers of actual people without knowing that they belonged to actual people, but it had offered no other evidence of Parks' knowledge. The court went to some length to explain how it would have been statistically possible for Parks not to have known that the numbers he used belonged to actual people. Here, however, the Government does not rely on statistical probabilities, arguing instead that Movant's

use of other persons' identification supports an inference that he also knew that the driver's license numbers belonged to actual people. Second, the district court in *Parks* did not conduct a sufficiency of the evidence analysis; it vacated the guilty plea on due process grounds because it was entered prior to *Flores-Figueroa*. Here, Movant was convicted by a jury, and the Fifth Circuit has clarified in *Stephens* that a sufficiency of the evidence analysis is appropriate in this circumstance. The evidence must be viewed in the light most favorable to the verdict, and direct and circumstantial evidence can be used to support a verdict. Movant has not established that the evidence presented to the jury at his trial is insufficient to support his convictions for aggravated identity theft for counts twelve through fourteen of the indictment.

Movant's insufficiency claims are without merit and should be denied.

## V. RECOMMENDATION

The *Motion to Vacate, Set Aside, or Correct Sentence* pursuant to 28 U.S.C. § 2255 should be **DENIED** with prejudice.

SIGNED this 30th day of November, 2010.

                                        IRMA CARRILLO RAMIREZ
                                        UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE